**Entered on Docket**
**June 17, 2014**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

Signed and Filed: June 16, 2014



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 13-30087DM |
| DONALD C. PIPKINS and | ) |
| LORNA D. PIPKINS, | ) Chapter 7 |
| | ) |
| Debtors. | ) |
| _____ | ) |

MEMORANDUM DECISION REGARDING
STRUCTURED SETTLEMENT ANNUITY

Lorna and Donald Pipkins ("Debtors") are chapter 7 debtors, and Barry Milgrom is the trustee ("Trustee") of their chapter 7 estate. Mr. Pipkins is the named beneficiary of certain structured settlement payments from an annuity; Debtors valued their interest in the future payments at $1.20, but did not claim the interest as exempt (even though they entered into a postpetition agreement to sell a partial interest in the future payments for $41,000 just two months after filing their schedules and without notice to Trustee and approval of this court). Trustee obtained an offer to purchase the estate's entitlement to the future income stream and filed a motion to sell that asset. Debtors objected, and more than one year after the petition date, they claimed the interest in future annuity payments as exempt.

-1-

Trustee in turn objected to the claimed objection.  In this memorandum decision, the court attempts to resolve (or at least narrow) various legal issues presented by the motion to sell and the claimed exemption.

I.    FACTUAL AND PROCEDURAL BACKGROUND

    A.    *The Annuity*

Mr. Pipkins is the named beneficiary of structured settlement payments from an annuity purchased and owned by Amtrak and administered by John Hancock Life Insurance Company ("John Hancock").  The annuity became effective on October 1, 1981, and Amtrak made a single premium payment of $204,997.00 on that date.  The annuity payments were two-tiered.  The first category of payments in the amount of $20,000 were payable annually for ten years, commencing on October 1, 1982; these payments would cease at the earlier of (1) when the tenth and final annual payment was made, or (2) the death of Mr. Pipkins.  The second category of payments would be paid whether or not Mr. Pipkins was deceased, and consisted of a $50,000 payment on January 20, 1991, and $75,000 payments on the twentieth day of January 2011, 2021, 2031 and 2041.  *Id.*  The annuity contract provided that "[t]o the extent allowed by law and subject to the policy's provisions, all benefits and money available or paid to any person and relating in any manner to this policy will be exempt and free from such person's debts, contracts and engagements, and from judicial process to levy upon or attach the same."

-2-

B.  *The Bankruptcy*

Debtors filed this bankruptcy case on January 14, 2013,[1] but declared their interests in certain structured settlement payments from an annuity as exempt more than one year after the petition date. On March 4, 2013, they filed their schedules and statement of financial affairs.  On Schedule B, they disclosed that they had an interest in a $1,200,000 annuity, but valued that interest at $1.20; on their Schedule C, they claimed real property located in San Francisco as exempt.  They did not claim any other property interest as exempt.

Even though Debtors had valued their interests in the annuity at $1.20 in Schedule B, Mr. Pipkins signed an agreement two months later (on May 5, 2013) to sell a $75,000 annuity payment due and payable on January 20, 2021, to BofI Federal Bank ("BofI") at a price of $41,000.[2]  Because the sale involved a structured settlement payment, the California Insurance Code (§ 10134, et seq.) required court approval.  To that end, BofI filed a petition for approval of the transfer of the structured settlement payments by Mr. Pipkins in the San Francisco Superior Court on June 5, 2013, approximately five months after Debtors filed this chapter 7 case.  To obtain court approval, Mr. Pipkins signed a declaration

---

[1] This case is the fifth one filed by Debtors since 2010 (10-33586, 11-31805, 11-33457, 11-32926, and 13-30087).  Debtors did not file a Schedule B in the first two cases.  In Case No. 11-32926 and Case No. 11-33457, Debtors did file Schedule Bs, but checked "None" in response to the query about annuities.

[2] Debtors did not disclose this post-petition sale agreement to the court or to the Trustee, nor did they at that time amend their schedules to disclose the actual value of the payments to be made under the annuity or to claim those future payments as exempt.

-3-

on May 6, 2013, indicating that he has no minor children or child support obligations, that the structured settlement payments were not intended to pay for future medical care or treatment or to provide for future necessary living expenses, that he does not have any continuing or future medical expenses relating to the personal injury and that he does not need the future structured settlement payments to pay for necessary living expenses, and that he was not in or facing a hardship situation.

At some point, Trustee learned about the attempt to sell the rights to the 2021 structured settlement payment. Correctly realizing that the interests in the future structured settlement payments belong to the estate, Trustee obtained an offer to purchase the future income stream (three payments of $75,000 payable every ten years from 2021 through 2041) from Novation Capital LLC for $75,400. On February 19, 2014, Trustee filed a motion for sale of the structured settlement payments, subject to overbid, and provided Debtors and creditors with a 21-day "scream-or-die" notice pursuant to B.L.R. 9014-1 (the "Sale Motion"). On February 24 and 25, 2014, Debtors filed multiple objections and requests for hearing, as well as an ex parte application for an order denying the Sale Motion; Debtors objected to the sale solely on the basis that they had received their discharge.

On February 25, 2014, the court issued an order overruling any objections based on entry of the discharge, stating:

> Mr. Pipkins confuses his right to a discharge with the trustee's duty to liquidate non-exempt assets for the benefit of the very creditors whose debts have been discharged. Rather than prolong Debtor's confusion, the court OVERRULES the objection to the sale and DENIES the request for dismissal of the case.

-4-

1 *See* Order dated February 25, 2014, at Docket No. 89.

2      On March 4, 2014, Debtors filed more objections to the Sale
3 Motion, as well as an ex parte motion to stop sale of the
4 payments, alleging for the first time that the structured
5 settlement payments were exempt. On March 7, Debtors filed an
6 amended Schedule C, claiming the annuity as exempt under Cal.
7 Code. Civ. Pro. § 704.100(c).[3] Trustee objected to this claim of
8 exemption because the annuity is not a matured life insurance
9 policy subject to exemption under Cal. Code. Civ. Pro.
10 § 704.100(c), and because the tardy claim of exemption was
11 asserted in bad faith. As an alternative to the denial of
12 exemption, Trustee requested that the court vacate Debtors'
13 discharge, require Debtors to pay the full amount of fees incurred
14 by Trustee and his professionals in this case, and dismiss the
15 case upon payment of the fees.

16      On March 19, 2014, the court held a hearing on the Sale
17 Motion, as well as on Debtors' claim of exemption. The court
18 agreed with Trustee that Cal. Code. Civ. Pro. § 704.100(c) is
19 inapplicable to the annuity and the structured settlement
20 payments. The court also repeated that (as stated in its February
21 24 order) the discharge entered on January 16, 2014, did not
22 remove the annuity payments from the estate and did not abrogate
23 this court's jurisdiction over the annuity payments and the

24

25     [3] In their multiple filings on March 4, Debtors assert that
even though they believe the proceeds are exempt, they would pay
26 the trustee the full amount of his administrative and other
expenses [estimated by Mr. Pipkins at $12,231.52] from "any
27 structured payments received." As the next scheduled payment will
occur in 2021, such a promise is insufficient. Trustee
28 understandably rejected this offer.

-5-

Trustee's authority to sell or administer them. The court questioned, however, whether the annuity contained a spendthrift trust clause and instructed Trustee's counsel to obtain a copy of the governing instrument from the issuer. Upon receipt of the document by Trustee, the court would issue a briefing schedule.

On April 4, 2014, Debtors filed another amended Schedule C, this time asserting that the "Annuity" is exempt under various subsections of Cal. Code. Civ. Pro. § 703.140, including subsection "703.140(11)." The court assumes that Debtors meant Cal. Code. Civ. Pro. § 703.140(b)(11), which (in relevant part) exempts a "debtor's right to receive, or property that is traceable to . . ."

> (D) A payment, not to exceed twenty-four thousand sixty dollars ($24,060), on account of personal bodily injury of the debtor or an individual of whom the debtor is a dependent [or]
>
> (E) A payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

Mr. Pipkins also filed a declaration on April 4, 2014, stating that after the petition date, he was terminated as a minister and lost a monthly income of $3,750.00 and that his Social Security benefits are now his only source of income, and are insufficient "to pay for the necessary living expenses and necessities for my wife and I." The job termination purportedly occurred after he signed his declaration stating that the 2021 structured settlement payment was not necessary for Debtor's support.

On April 9, 2014, after being advised that Trustee had

-6-

obtained the relevant contract and had provided a copy to Debtors, the court issued a scheduling order for briefing. The court observed that Debtors had amended their Schedule C twice since the March 19 hearing. The court directed Debtors to file and serve their memorandum of points and authorities in support of their claimed exemptions and of their opposition to the Sale Motion no later than April 25, 2014. Trustee was directed to file his response no later than May 12, 2014, after which the matter would stand submitted for decision if the court could rule as a matter of law. If material facts remained in dispute, the court would set an evidentiary hearing as appropriate.

On April 25, 2014, Debtors filed their memorandum of points and authorities as well as several declarations. Debtors argued that (1) Amtrak owns the annuity, and thus this court lacks jurisdiction over payments to be made to Mr. Pipkins through the annuity; (2) when Debtors received their discharge in January 2014, Trustee's "control of the debtors' estate ceased on that date"; (3) the annuity is exempt under Cal. Code Civ. P. 704.100(c); (4) "the structured settlement is the result of a personal injury award [Mr. Pipkins] received and is exempt because it is necessary to support the debtors;" (5) the annuity agreement protects the payments from the claims of creditors, and (6) Debtors did not amend their Schedule C in bad faith and thus the amendment should be permitted as a matter of course. Debtor did not produce any independent evidence to support his contentions that the structured settlement payments are the result of a personal injury award until after the briefing had closed.

On May 12, 2013, Trustee filed his reply contending that (1)

-7-

relevant date for determining whether Debtors need the structured settlement payments for their support is the petition date; (2) the annuity payments are not exempt under Cal. Code Civ. P. § 703.140; (3) the right to payments under the annuity belong to the estate; (4) the annuity is not a spendthrift trust, and is not insulated from the claims of creditors.  Trustee stated that he is not pursuing his objection based on Debtor's bad faith conduct, but reserves the right to seek damages from Debtors under 28 U.S.C. § 1927.

On May 27, 2014, without obtaining leave from the court and after the court-ordered deadlines for the submission of briefing, Mr. Pipkins filed an amended declaration in which he for the first time provided independent evidence that the structured settlement payments arose from a personal injury claim for which Debtor had sought at least $606,211.00 in special damages for loss of wages. He also incorrectly contended that there is no value to the future annuity payments to the estate because they are purportedly contingent on his survival.  Trustee filed a motion to strike the untimely declaration.  On June 3, Debtors filed yet another amended declaration.

-8-

1    II.    ISSUES PRESENTED[4]

2       1.  *Under 11 U.S.C § 541, does the estate's property*

3 *encompass Mr. Pipkins' entitlement to future structured settlement*

4 *payments under the annuity*?  **YES**, unless Debtors can assert a

5 valid exemption in the annuity payments.

6

7            (a)  *Does Amtrak's ownership of the annuity extend to structured settlement payments?*  **NO.**

8            (b)  *Is the annuity a spendthrift trust?*  **NO.**
There is no trust and no restriction on the Mr.

9 Pipkins' ability to assign his entitlement to payments.  Even if such a restriction existed, it

10 is unenforceable under the Bankruptcy Code (11 U.S.C. § 541(c)(1) and *321 Henderson Receivables*

11 *Origination LLC v. Sioteco*, 173 Cal. App. 4th 1059, 93 Cal. Rptr. 3d 321 (2009).

12            (c)  *Is the "Protection Against Creditors" clause*

13 *in the annuity policy enforceable?*  **NO.**

14       2.  *Are Debtors entitled to claim an exemption under Cal.*

15 *Code. Civ. Pro. § 703.140(b)(10) and (11)*?  **PERHAPS**, assuming the

16 court considers Mr. Pipkins' late-filed amended declarations.

17

18            (a)  *Will the court permit introduction of Debtors'*
*late-filed declarations and exhibits?*  **YES**, if
Debtors compensate Trustee for the costs of

19 preparing his reply.  Otherwise, the untimely declarations and evidence will be stricken.

20

21            (b) *Can the court deny or limit Debtors' claimed*
*exemptions on the basis of bad faith or prejudice*
*to creditors?*  **NO.**  *Law v. Siegel,* 134 S.Ct. 1188

22 (2014).

23 _____

24     [4]The court has previously addressed and rejected Debtors'
contention that the entry of their discharge precludes Trustee
from administering assets that they owned prior to the bankruptcy.

25 The court stands by its prior ruling and will not address the
issue further.  Likewise, the court will not revisit its ruling

26 that Cal. Code Civ. Pro. § 704.100(c) is inapplicable to the
annuity and the structured settlement payments.  *See In re Pikush*,

27 157 B.R. 155 (9th Cir. BAP 1993), *aff'd*, 27 F.3d 386 (9th Cir.
1994).

28

Case: 13-30087   Doc# 133   Filed: 06/16/14   Entered: 06/17/14 11:06:23   Page 9 of 22

(c) *Is the court limited to considering Debtors'*
*financial circumstances as of the petition date*
*when determining whether Debtors are entitled to a*
*hardship exemption under Cal. Code. Civ. Pro. §*
*703.140(b)(11)(D)*? **NO**.

(d) *Are Debtors entitled to the hardship exemption*
*and, if so, in what amount?* **PERHAPS**, but an
evidentiary hearing is necessary.

III. DISCUSSION

A. *Mr. Pipkins' Rights in and to Future Structured*
*Settlement Payments Under the Annuity Are Property of*
*the Estate.*

Debtors contend that Trustee cannot sell the rights to future structured settlement annuity payments because the annuity belongs to Amtrak and not to the Debtors. This is irrelevant. Even though Amtrak owns the annuity, it does not own the entitlement to the structured settlement payments. Mr. Pipkins is the beneficiary of the annuity payments. The right to the payments and the resulting income stream belonged to Debtors as of the petition date. Otherwise, Mr. Pipkins would not have been able to sell his interests to the January 2011 settlement payment in 2007.[5] Moreover, Mr. Pipkins would not have been able to sell his

_____

[5] In his reply filed on May 12, Trustee notes that Debtor failed to schedule a judgment debt in the amount of $84,412.60 entered in favor of John Hancock, the issuer of the annuity, by the United States District Court for the Northern District of California in Case No. 3:11-cv-04992-CRB on February 14, 2012; Trustee attached the default judgment as Exhibit D. The complaint in that action alleges that on or about July 3, 2007, the San Francisco Superior Court approved the transfer by Mr. Pipkins of his rights in the structured settlement payment of $75,000 payable on January 20, 2011, to payee 321 Henderson Receivables Origination, LLC ("321 Henderson"). On or about March 7, 2007, Mr. Pipkins sent John Hancock a notarized letter requesting that 321 Henderson receive his January 2011 annuity payment. John Hancock accidentally remitted $75,000 checks to both Mr. Pipkins and to 321 Henderson, and Mr. Pipkins purportedly accepted payment of the 2011 annuity payment but did not respond to the request of

-10-

purported right to the 2021 structured settlement payment to BofI Bank, but he nonetheless attempted to do so _after_ the petition date, when those rights belonged to the bankruptcy estate. Trustee acquired whatever property interests Debtors held as of the petition date (see 11 U.S.C. § 541), and thus Trustee did have the authority to sell the structured settlement payment rights, as Debtors had not declared them exempt as of the time the Sale Motion was filed.[6]

The Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property[.]" 11 U.S.C. §541(a)(1). "[M]ost assets become property of the estate upon commencement of a bankruptcy case, see 11 U.S.C. § 541, and exemptions represent the debtor's attempt to reclaim those assets or, more often, certain interests in those assets, to the creditors' detriment." _Schwab v. Reilly_, 560 U.S. 770, 785 (2010).

Section 541(c)(1)(A) provides that any interest of a debtor in property becomes property of the estate notwithstanding any provision in an agreement, transfer instrument or applicable nonbankruptcy law that restricts or conditions transfer of such as

---

John Hancock for return of the funds. John Hancock therefore sought, and was granted, a judgment for restitution and reimbursement of the January 2011 erroneous payment to Mr. Pipkins.

   [6] Debtors also contend that Trustee cannot sell the rights to the future annuity payments because they are contingent on Mr. Pipkins' survival. This contention is simply incorrect. The terms of the annuity clearly provide that the 2011, 2021, 2031 and 2041 installments of $75,000 would be paid whether or not Mr. Pipkins was deceased. _See_ discussion, _supra_.

-11-

interest. 11 U.S.C. § 541(c)(1)(A). Under these provisions of section 541, all of Debtors' rights under the annuity, including its payment stream, are property of the bankruptcy estate and subject to Trustee's administration (including a sale of the future payments). *See In re Greenly*, 481 B.R. 299, 310-11 (Bankr. E.D. Penn. 2012) (debtor's vested interest in payments from structured settlement annuity is included in "property of the estate" notwithstanding an anti-assignment clause); *In re Jackus*, 442 B.R. 365, 369 (Bankr. D. N.J. 2011) (beneficial interest that debtor possessed in annuity payments at time of her chapter 7 filing became "property of the estate" despite any contractual provision prohibiting debtor from assigning her interest in such payments); *In re Jacob*, 418 B.R. 37, 39 (N.D.N.Y. 2009) ("It is undisputed that Jacob does not own the annuity at issue. However, he does have a right to collect the payments that is a legal or equitable interest in the property. Thus, the right to collect the payments is an asset of the bankruptcy estate."); *In re Kent*, 396 B.R. 46, 54 (Bankr. D. Ariz. 2008) (debtor's entitlement to payments from structured settlement annuity became property of the estate, notwithstanding any contractual anti-assignment language to the contrary); *In re Hughes,* 318 B.R. 704 (Bankr. W.D. Mo. 2004) (debtor's right to receive payments under annuity was included in property of the estate); *In re Myers*, 200 B.R. 155, 159 (Bankr. N.D. Ohio 1996) (under § 541(a), all payments to be received under the terms of a structured settlement were property of the estate); *In re Dees*, 155 B.R. 238, 240 (Bankr. S.D. Ala. 1992) (structured annuity benefits from a wrongful death settlement accruing before and after the filing of the bankruptcy

-12-

petition are estate property); *In re Hartman*, 115 B.R. 171, 175 (W.D. Ark. 1990) (full value of debtor's vested interest in retirement plan is property of his chapter 13 estate and must be considered in complying with the requirements of section 1325).

The fact that the annuity policy contains the "Protections from Creditors" provision[7] does not change the analysis, because -- as held in most of the foregoing cases -- such provisions are unenforceable under 11 U.S.C. § 541(c)(1)(A). In any event, even if the annuity here had contained an outright prohibition on the beneficiary's [Mr. Pipkin's] ability to transfer his payment rights (which it does not), such a prohibition would have been unenforceable under California law. *321 Henderson Receivables Origination LLC v. Sioteco*, 173 Cal. App. 4th 1059, 93 Cal. Rptr. 3d 321 (2009) (holding that California Commercial Code sections 9102(a)(61) and 9408 limiting the validity of anti-assignment clauses are applicable to structured settlement annuity payments).

Notwithstanding the unenforceable nature of contractual anti-alienation provisions in bankruptcy, a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in bankruptcy. Debtors argue that the annuity constitutes a spendthrift trust which precludes the payments from being property of the estate under section 541(c)(2). Section 541(c)(2) does

---

[7] The Protection Against Creditors clause stated: "To the extent allowed by law and subject to the policy's provisions, all benefits and money available or paid to any person and relating in any manner to this policy will be exempt and free from such person's debts, contracts, and engagements, and from judicial process to levy upon or attach the same."

-13-

provide an exception to the general rule set forth in section 541(a)(1) that all legal or equitable interests of the debtor become property of the estate as of the commencement of the case, stating that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." This provision excludes from the property of the bankruptcy estate interests in trusts that are protected under a spendthrift clause that is enforceable under applicable state law.

Here, however, no such spendthrift trust exists. The court has not located any case law in which the proceeds of a structured settlement were found to be held in trust for a payee-annuitant and none appears to exist. *Greenly,* 481 B.R. at 307. In any event, the legal requisites for creation of a trust under California law have not been satisfied, such as manifestation of an intent to create a trust. Cal. Probate Code § 15201 ("A trust is created only if the settlor properly manifests an intention to create a trust."). No such intent is expressed or manifested in the governing annuity policy. Moreover, no trust property has been identified. Cal. Prob. Code § 15202 ("A trust is created only if there is trust property."). At best, the annuity would be the property, but Amtrak owns the annuity. It is not held in trust for the Mr. Pipkins. Even if the future income stream could be considered the res of a trust, Mr. Pipkins was able assign that res, as evidenced by the sale and assignment in 2007 of his entitlement to the 2011 annuity payment. Given his ability to assign his rights to future income streams, a trust in which those income streams constitute the res is not spendthrift in nature.

-14-

*See Chatard v. Oveross,* 179 Cal. App. 4th 1098, 1104 (2009) ("[a] spendthrift trust is created where the settlor gives property in trust for another, and *provides that the beneficiary cannot assign or otherwise alienate his or her interest*, and that it shall not be subject to the claims of the beneficiary's creditors") (emphasis added), *citing* 13 Witkin, Summary of Cal. Law (10th ed. 2005) *Trusts*, § 151, p. 715.

Based on the foregoing law and facts, the court concludes that as of the time Trustee filed the Sale Motion, Mr. Pipkins' entitlement to future annuity payments was property of the estate. The question now is whether Debtors have claimed a valid exemption in those future payments, thereby removing them from the estate.

B.   *Debtors May be Able to Claim a Valid Exemption in the Future Income Stream From the Annuity.*

1.   Request to Strike Late-Filed Briefing and Evidence

As mentioned, Debtors produced evidence after the court-ordered briefing deadlines for briefing had expired which indicated that a significant portion of the damages asserted by Mr. Pipkins against Amtrak were based on loss of wages and that the structured settlement was based on a personal injury claim (although Mr. Pipkins did indicate the latter to the court at the hearing on March 19, 2014).   Trustee has moved the court to strike these late filings, and the court can strike pleadings and documents that do not comply with court rules or orders.   *Jones v. Metropolitan Life Ins. Co.*, 2010 WL 4055928 (N.D. Cal. Oct. 15, 2010).

The court is inclined to strike those late filings (i.e.,

-15-

those filed after April 25, 2014) unless Debtors compensate Trustee for his fees and expenses incurred in replying to their April 25 briefing and declarations. Had Debtors been forthright from the outset (i.e., by properly valuing Mr. Pipkins' interest in payments from the annuity at more than $1.20) and had they not tried to sell Mr. Pipkins' entitlement to the 2021 distribution for $41,000 without court authority just two months after valuing the annuity at $1.20, the prejudice of allowing the late filings may have been tempered by considerations of Debtors' status as pro se litigants unfamiliar with the necessity of complying with court-ordered deadlines. But given Debtors' litigation tactics, the court will exercise its authority to exclude the late-filed documents absent compensation to Trustee.[8]

### 2. Bad Faith or Prejudice to Creditors

Amendments to a debtor's schedules, including exemption claims, are liberally permitted at any time before the case is closed. *See* Fed. R. Civ. P. 1009(a). Nonetheless, prior to the Supreme Court's decision in *Law v. Siegel*, 134 S.Ct. 1188 (2014), bankruptcy courts could disallow an amended exemption claim if the debtor had acted in bad faith or if the creditors were prejudiced by the delay. *Arnold v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. BAP 2000). In *Law v. Siegel*, however, the

---

[8] The court is not sanctioning Debtors for claiming their exemptions late and only after the Trustee filed and incurred the expense of the Sale Motion. Rather, it is simply excluding evidence submitted after the close of briefing, unless Trustee is compensated for the time and expense of responding to Debtors' incomplete but timely filings. Had Debtors provided the information prior to their court-ordered April 25 deadline, Trustee's reply brief may have been considerably different, and Trustee should not have to absorb the costs of responding to Debtors' ever-changing arguments.

-16-

Supreme Court held that the court cannot disallow an exemption or prevent the amendment of an exemption on equitable grounds if the exemption satisfies the statutory requisites. Therefore, the court will not disallow Debtor's exemptions, or preclude their amendment, on bad faith grounds.[9]

### 3. Relevant Exemption Statutes[10]

Since Trustee filed the Sale Motion, Debtors have amended their exemptions multiple times in an effort to "reclaim" the entitlement to annuity payments from property of the estate. The court agrees with Trustee that the rights to future annuity payments are not exempt under California Code of Civil Procedure section 703.140(b)(7) and (b)(8), or under section 704.100(c) (as discussed previously). However, the court believes that Debtors may be entitled to claim exemptions under subsections (b)(10) and (b)(11) of section 703.140, although the amount of the exemptions would require further evidence. The declaration and exhibits filed by Mr. Pipkins after the close of briefing show that the Federal Employers Liability Act lawsuit filed against Amtrak, and culminating in the structured settlement annuity, included claims

---

[9] That said, the court can still exclude evidence that is not presented timely in accordance with its orders. Thus, while perhaps the court cannot deny an exemption because of prejudice to creditors or untimeliness, it can determine the admissibility of evidence. To the extent such evidence is essential to a determination of an entitlement to an exemption, a debtor may not be able to establish the validity of his or her claimed exemption.

[10] Debtors have not asserted an exemption under Cal. Code Civ. Pro. § 704.140, which provides that "[w]here an award of damages or a settlement arising out of personal injury is payable periodically, the amount of such periodic payment that may be applied to the satisfaction of a money judgment is the amount that may be withheld from a like amount of earnings under Chapter 5 (commencing with Section 706.010) (Wage Garnishment Law)." The court will therefore not address that statute here.

-17-

for wage loss ($606,211.00) and claims that Mr. Pipkins sustained physical injuries from a train derailment that rendered him a "totally disabled paranoid schizophrenic." If the court considers these late-filed pleadings, the following exemptions may apply:

> **Cal. Code of Civ. Pro. § 703.140(b)(10)(E):** Exempts a "payment under a . . . annuity, or similar plan or contract on account of illness, <u>disability</u>, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." (Emphasis added.)

> **Cal. Code of Civ. Pro. § 703.140(b)(11)(D):** Exempts a debtor's right to receive, or property that is traceable to, . . . a "payment, not to exceed twenty-four thousand sixty dollars ($24,060), on account of personal bodily injury of the debtor[.]"

> **Cal. Code of Civ. Pro. § 703.140(b)(11)(E):** Exempts a "payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

While the $24,060 exemption under subsection Cal. Code of Civ. Pro. § 703.140(b)(11)(D) is not dependent on a determination of an amount reasonably necessary for the support of Debtors, the other subsections are. According to Trustee, Debtors are bound by representations they made to the state court when attempting to sell Mr. Pipkins' right to the 2021 annuity payment. In particular, Mr. Pipkins signed a declaration indicating that, as of May 2013, he had no minor children or child support obligations, that the structured settlement payments were not intended to pay for future medical care or treatment or to provide for future necessary living expenses, that he did not have any continuing or future medical expenses relating to the personal injury, that he did not need the future structured settlement payments to pay for necessary living expenses, and that he was not

-18-

in or facing a hardship situation.  While this declaration is
probative, it is not conclusive.  Circumstances may have changed.

Trustee also contends that the court should not consider any
such changed circumstances, as any determination of amounts
reasonably necessary for Debtors' support should be based on
Debtors' financial condition as of the petition date.  While a
"debtor's exemption rights are determined as of the petition
date," *In re Kim*, 257 B.R. 680 (9th Cir. BAP 2000), a
determination of the extent to which assets are necessary for the
support of debtors and their dependents is necessarily a forward-
looking one under California law.  As the Bankruptcy Appellate
Panel observed in *In re Moffat*, 119 B.R. 201 (9th Cir. BAP 1990),
*aff'd*, 959 F.2d 740 (9th Cir. 1992), a court should consider the
following factors "in determining whether a given asset is
reasonably necessary for the debtor's support":

> [T]he debtor's present <u>and anticipated living expenses
> and income</u>; the age and health of the debtor and his or
> her dependents; <u>the debtor's ability to work and earn a
> living</u>; the debtor's <u>training, job skills and education</u>;
> the debtor's other assets and their liquidity; the
> debtor's ability to save for retirement; and any special
> needs of the debtor and his or her dependents.

*Moffat*, 119 B.R. at 206 (emphasis added).  If a court should
consider "anticipated living expenses and income" to determine the
extent to which an asset is necessary for the debtor's reasonable
support, the court is not limited to considering a debtor's
financial condition as of the petition date.  Otherwise, a debtor
who has no occupation or income as of the petition date but has
the ability to work and earn a living soon thereafter could exempt
all of the asset as reasonably necessary for his or her support.
There would be no need for a court to consider that debtor's

-19-

ability to work, training, job skills or education, and -- most importantly -- "anticipated" expenses and income.

As the court must consider the present and future financial condition of Debtors in determining whether the future income stream from the annuity is necessary for their support, it cannot resolve the issue of whether Debtors are entitled to an exemption under Cal. Code. Civ. P. § 703.140(b)(10)(E) or (11)(E). And the court cannot determine at this juncture whether Debtors are entitled to an exemption under Cal. Code Civ. P. § 703.140(b)(11)(D), because Debtors waited until after the close of briefing to submit the only evidence as to whether the structured settlement payments were based on lost wages. As noted above, the court will strike that evidence unless Debtors compensate Trustee for the costs incurred in preparing his reply.

IV.  CONCLUSION

The Debtors' entitlement to payments from the annuity are property of the estate which can be sold by Trustee unless Debtors' claimed exemptions are valid. Assuming that Debtors reimburse Trustee for the costs of filing the reply, the court will set an evidentiary hearing to determine whether the payments are necessary for Debtors' support. Trustee should file a declaration no later than June 30, 2014, setting forth the fees and expenses incurred in preparing the reply. Trustee should also upload an order directing Debtors to pay that amount no later than July 31, 2014. If the amount is not timely paid, the court will strike the untimely documents filed by Debtors and will disallow Debtors' claimed exemptions to the extent they are unsupported by evidence. If the amount is timely paid, the Trustee should notify

-20-

the court which will then enter a scheduling order for a further
evidentiary hearing on Debtors' entitlement to their claimed
exemptions.

**END OF MEMORANDUM DECISION**

-21-

1

2                              COURT SERVICE LIST

3

4    Donald C. Pipkins
     473 Andover St
5    San Francisco, CA 94110

6
     Lorna D. Pipkins
7    473 Andover St
     San Francisco, CA 94110
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   -22-